ORDERED.

**Dated:  March 22, 2017**

Cynthia C. Jackson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

RONALD JACK UTTER and                    Case No. 6:15-bk-01522-CCJ
ELIZABETH ANN UTTER,                      Chapter 7

      Debtors.
_____/

ROBERT CROASMUN,                          Adversary No. 6:15-ap-00089-CCJ

      Plaintiff,
vs.

RONALD JACK UTTER and
ELIZABETH ANN UTTER,

      Defendants.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

      This adversary proceeding came before the Court for trial, on a two count Complaint, with

thirty-five single spaced paragraphs of allegations going back over a period of twenty-four years.

By the adversary, Plaintiff asks the Court to (i) except from discharge under Section 523 of the

Bankruptcy Code, an alleged debt owed to him in the amount of $135,000, claiming it was "obtained by false pretenses, misrepresentation or fraud" and (ii) deny the Debtors a discharge under Section 727 of the Code, of any and all debts (whether owing to him or other creditors), claiming the Debtors made a "false oath or account" by failing to list certain assets and by understating their "income and expenses" on their bankruptcy filings.[1] It is the Plaintiff's burden of proof in all respects.

The Plaintiff represented himself *pro se* throughout the proceeding. The Debtors were represented by counsel. This Court considered the testimony of the Debtors, who were the only witnesses called at trial, the pleadings and documents filed with this Court, and all exhibits admitted into evidence.[2] In deference to Plaintiff's *pro se* status, this Court spent an inordinate amount of time after the trial reviewing all forty-five exhibits submitted by Plaintiff, consisting of over six hundred pages of documents, deposition transcripts and reports, to determine whether the Plaintiff met his burden of proof for the claims he asserted. For the reasons set forth below, the Court finds that the Plaintiff failed to meet his evidentiary burden and therefore finds in favor of the Debtors. The Court makes the following finding of facts and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### Facts

The parties are former friends who started business dealings together over twenty-four years ago. The Plaintiff is an educated, former businessman, holding both a contractor and real estate license. The Plaintiff has over twenty-five years of experience in the commercial and residential real estate business. The Debtor, Ronald Jack Utter, is a part-time auto salesman who receives social security. The Debtor, Elizabeth Ann Utter, is a registered nurse. Over the course

---

[1] Doc. No. 1.

[2] The parties' respective exhibits were admitted into evidence at the beginning of trial without objection.

of their business dealings the Plaintiff loaned the Debtors money, and the Debtors provided the Plaintiff with security interests in the form of mortgages or vehicle titles.

<u>Parties' Early Business Dealings- the 1990's</u>

The parties' business relationship began ominously. In 1992, the Plaintiff loaned the Debtors over $78,000 (the "1992 Loans"). In return, the Debtors gave the Plaintiff a junior mortgage on real property located at 1159 Magnolia Avenue, Daytona Beach, FL 32114 (the "Magnolia Property"), as security for the 1992 Loans as well as titles to various vehicles. Sometime in 1993, Mr. Utter gave the Plaintiff two checks in the total amount of $40,000, in connection with the 1992 Loans (collectively the "1993 Checks"). At some point, the 1993 Checks were returned for insufficient funds. Mr. Utter testified at trial that he gave the Plaintiff the 1993 Checks for his "financial records" only, and the checks admitted into evidence stated on their face "Hold." Plaintiff disagrees that the checks were only for his "financial records", and asserted that Mr. Utter provided him with the 1993 Checks to induce him to release vehicle titles he held as security--which he did. Despite the Plaintiff's release of the vehicle titles and the return of the 1993 Checks, Mr. Utter continued repaying on the 1992 Loans. In 1994, a senior mortgagee foreclosed on the Magnolia Property, which eliminated the junior mortgage used as security for the 1992 Loans.

In 1996, the Debtors filed a Chapter 7 bankruptcy case and received a discharge.[3] The Debtors did not however list the Plaintiff as a creditor in the bankruptcy case and as such, the Plaintiff's debt was not discharged.[4] The parties' early business relationship culminated in 1998

---

[3] *In re Utter*, Case No. 3:96-bk-00522-JAF, Chapter 7 bankruptcy case filed on January 31, 1996 in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division. Discharge entered on May 17, 1996. Mr. Utter filed another bankruptcy case prior to the parties' business dealings. *In re Ronald Jack Utter*, Case No. 84-60160-jl, Chapter 7 bankruptcy case filed on August 29, 1984 in the United States Bankruptcy Court for the Eastern District of Kentucky. Discharge entered on July 25, 1986.

[4] The Debtors did not dispute that they failed to list Plaintiff in the prior bankruptcy case and did not assert that the prior bankruptcy case discharged the amounts owed to Plaintiff as of January 31, 1996.

when the Plaintiff obtained a money judgment against Mr. Utter for the 1992 Loans (the "1998 Judgment"). The 1998 Judgment totaled $93,600.

Parties' Later Business Dealings –the 2000's

Five years later, Mr. Utter offered the Plaintiff a 1999 Chevy Tahoe and payment of the 1998 Judgment in installments, provided that the Plaintiff execute and record a notice of satisfaction of the 1998 Judgment. Plaintiff agreed to do so and subsequently recorded a satisfaction of the 1998 Judgment in the public records. It is undisputed that Mr. Utter provided the 1999 Chevy Tahoe to the Plaintiff and continued to make payments for two years on the "satisfied" 1998 Judgment.

Notwithstanding their troubled business history, and two years *after* Mr. Utter ceased making installment payments on the "satisfied" 1998 Judgment, the Plaintiff agreed to loan the Debtors additional monies. On September 8, 2006, the Plaintiff loaned the Debtors $25,000. Over four months later, the Debtors gave Plaintiff a check for $10,300 (the "$10,300 Check"). Over two months after receiving the $10,300 Check, the Plaintiff loaned the Debtors an additional $5,000 and the next month loaned the Debtors another $5,000. At this point, the Plaintiff had loaned the Debtors additional monies totaling $35,000 (the "Additional Loans"). The Plaintiff asserted that Mr. Utter gave him the $10,300 Check to induce him to make the Additional Loans.

In 2007, the Debtors gave Plaintiff a promissory note in the amount of $81,000 (the "2007 Note") representing amounts due on the Additional Loans as well as amounts still owing on the "satisfied" 1998 Judgment. A month later, the Debtors gave Plaintiff a mortgage on real property located at 116 Mergansar Circle, Daytona Beach, FL 32119 (the "Mergansar Property") as security for the 2007 Note (the "Mergansar Mortgage"). The Plaintiff never recorded the Mergansar Mortgage in the public records.

4

The Debtors made four payments on the 2007 Note and then defaulted.  Mr. Utter testified that the Debtors stopped paying on the 2007 Note because the Utters were struggling financially as a result of his business closing.  The Debtors also defaulted with the senior mortgagee on the Mergansar Property.  On June 6, 2008, the senior mortgagee filed a foreclosure action on the Mergansar Property.  The clerk issued a certificate of title on June 23, 2009, to the senior mortgagee of the Mergansar Property.  The junior lienholders received no funds from the sale because the Mergansar Property had no equity.

It is undisputed that the Plaintiff knew he would only receive a junior mortgage on the Mergansar Property to secure the 2007 Note, but the parties dispute whether the junior mortgage was supposed to be a second or a third.  The Plaintiff stated that the Debtors promised him a second mortgage on the Mergansar Property, which induced him to make the Additional Loans.  Mr. Utter denied promising a second mortgage to Plaintiff and testified that he told Plaintiff a second mortgage already encumbered the Mergansar Property.  Plaintiff further asserts that Mr. Utter failed to disclose that a foreclosure was imminent.  Mr. Utter testified that a foreclosure action was not imminent when the Mergansar Mortgage was signed.   Mrs. Utter denied having any discussions with the Plaintiff and testified that she signed the 2007 Note and the Mergansar Mortgage only when asked to do so by Mr. Utter.

### Litigation and Bankruptcy- the 2010's

Five years after the Property sold at a foreclosure sale and nearly seven years after the Debtors defaulted on the 2007 Note, the Plaintiff filed a breach of contract suit against the Debtors in the Circuit Court for Volusia County, Florida (the "State Court Litigation").[5]  The Circuit Court entered partial summary judgment in favor of the Debtors, and found that Florida's statute of

---

[5] *Robert M. Croasmun v. Ron Utter, et. al.*, filed on October 17, 2014 in the Circuit Court of the Seventh Judicial Circuit in and for Volusia County, Florida, Case. No. 2014-31742-CICI.

limitations barred the Plaintiff's claim on any payments due five years prior to the commencement of the State Court Litigation.[6]

On February 23, 2015 (the "Petition Date"), the Debtors filed this Chapter 7 bankruptcy case. The Debtors' bankruptcy schedules listed, among other items, a checking account with a balance of $50.00, Mrs. Utter's gross monthly income of $6,671.17, and Mr. Utter's monthly social security income of $768.00 and monthly auto sales income of $381.00.[7] The Statement of Financial Affairs listed the Debtors' income separately for years 2015 and 2014, and listed a combined income for 2013. The Debtors subsequently amended the Statement of Financial Affairs to correct an apparent typographical error for Mrs. Utter's 2014 income, to revise Mr. Utter's 2014 income and to list the Debtors' 2013 income separately.[8]

## Conclusions of Law

A fundamental tenet of the Bankruptcy Code is to provide a "fresh start" to "the honest but unfortunate debtor."[9] With this in mind, bankruptcy courts construe exceptions to discharge liberally in favor of debtors and strictly against an objecting creditor.[10] The denial of a discharge must be for reasons that are real and substantial, not merely technical or conjectural.[11] An objecting creditor must prove all required elements by a preponderance of the evidence.[12]

The Court begins with the Plaintiff's Section 523(a)(2)(A) claim. Section 523(a)(2)(A) of the Bankruptcy Code provides, in relevant part, that any monies obtained by false pretenses, a false representation or actual fraud may not be discharged in a Chapter 7 bankruptcy case.[13] The

---

[6] D. Ex. 4.
[7] Main Case Doc. No. 1.
[8] Main Case Doc. No. 44.
[9] *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).
[10] *See Equitable Bank v. Miller* (*In re Miller*), 39 F.3d 301, 304 (11th Cir.1994).
[11] *Id*.
[12] *See* 498 U.S. 279 (1991).
[13] *See* 11 U.S.C. §523(a)(2)(A).

traditional elements of common law fraud are used to establish Section 523(a)(2)(A) claims.[14] False pretenses are any intentional fraud or deceit committed by the Debtors accomplished by any manner or method.[15] "It is a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongfully induced by a debtor to transfer property or extend credit to the debtor…"[16]  A false representation requires (i) a false representation to deceive the creditor, (ii) the creditor relied on the misrepresentation, (iii) the reliance was justified, and (iv) the creditor was damaged because of the misrepresentation.[17] Actual fraud is deception or trickery committed with wrongful intent.[18]

Common to all Section 523(a)(2)(A) claims is the debtor's actual intent to deceive.[19]  The debtor's intent to deceive must be actual and may not be implied.[20]  Bankruptcy courts review the totality of the circumstances to determine whether a debtor intended to deceive.[21] Based upon the evidence presented at the trial of this proceeding, the Court finds that the Plaintiff failed to prove that the Debtors intended to deceive Plaintiff by either a false pretense, false representation or actual fraud.

The Court finds that the Debtors did not intend to deceive Plaintiff by false pretense, false representation or actual fraud during the parties' early business dealings.  Mr. Utter's issuance of the 1993 Checks to allegedly release vehicle titles does not, in itself, constitute fraud to preclude

---

[14] *SEC v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir. 1998).
[15] *See Taylor v. Wood (In re Wood)*, 245 Fed. Appx. 916, 918 (11th Cir.2007) citing *In re Gilmore,* 221 B.R. 864, 872 (Bankr.N.D.Ala.1998).
[16] *Id.*
[17] 153 F.3d at 1281.
[18] *See Husky Intern. Electronics, Inc. v. Ritz*, 136 S.Ct. 1581, 1586 (2016).
[19] *See Veazey v. Sutton (In re Sutton)*, 550 B.R. 917, 923 (Bankr. N.D. Ga. 2016).
[20] *Id.*
[21] *See J. Thompson Investments, LLV v. Soderstrom (In re Soderstorm)*, 524 B.R. 835, 841 (Bankr. M.D. Fla. 2015); *Bropson v. Thomas (In re Thomas)*, 217 B.R. 650, 653 (Bankr. M.D. Fla. 1998).

the discharge of a debt pursuant to Section 523(a)(2)(A).[22]   The issuance of a check is merely a promise by the drawer to pay the check in the event it is not honored by the bank.[23]   The Plaintiff proved the dishonor of the 1993 Checks, but the evidence failed to show a fraudulent intent by the Debtors when issuing the 1993 Checks.   Mr. Utter's continued repayment of the loans after the Plaintiff released the vehicle titles does not support a finding of fraudulent intent.   Nor did the evidence demonstrate any fraudulent intent by the Debtors when, in 1994, a senior mortgagee foreclosed upon Plaintiff's junior mortgage.   The Debtors' failure to list Plaintiff as a creditor in their prior bankruptcy case is troubling, but there is no evidence that the Debtors intentionally failed to list the Plaintiff.

The Court finds that the Debtors did not intend to deceive Plaintiff by false pretense, false representation or actual fraud during the parties' later business dealings. Mr. Utter's testimony that he made payments on the "satisfied" 1998 Judgment for two years was credible and did not support Plaintiff's assertions that Mr. Utter intended to deceive Plaintiff when he offered a 1999 Chevy Tahoe and repayment of the 1998 Judgment by installment.   Plaintiff voluntarily accepted the offer that required satisfaction of the 1998 Judgment and received payments on that "satisfied" judgment for two years thereafter.

The evidence does not support that Mr. Utter intended to deceive Plaintiff when he promised to repay the previous loans if given the Additional Loans.   "Proof of fraud in cases involving unfulfilled promises requires the plaintiff to show that at the time the promises were made, the defendant knew he could not fulfill them, or had no intention of fulfilling them."[24]   The

---

[22] See *Southeast Bank, N.A., v. Hunter (In re Hunter)*, 83 B.R. 803, 804 (M.D. Fla. 1988)("The issuance of a worthless check to purchase good does not, in itself, constitute fraud so as to preclude the discharge of a debt pursuant to §523(a)(2)(A)")

[23] *Id.*

[24] *In re Thomas,* 217 B.R. at 653.

Debtors made four payments on the 2007 Note, which included payment toward the Additional Loans, but ceased due to Mr. Utter's loss of business. The Plaintiff's contention that the Debtors issued the $10,300 Check to induce Plaintiff to make the Additional Loans is not supported by the evidence either. Plaintiff provided the Debtors with $25,000 of the Additional Loans more than four months *prior* to the date of the $10,300 Check, and therefore the $10,300 Check could not have induced Plaintiff as to $25,000 of the Additional Loans. Plaintiff then provided the Debtors with the remaining $10,000 of the Additional Loans two months *after* the date of the $10,300 Check, and given the length of time the Plaintiff had possession of the $10,300 Check (which the Plaintiff could have negotiated), this Court is skeptical that the $10,300 Check induced Plaintiff to provide the Debtors with the remaining $10,000 of the Additional Loans. And although the Plaintiff argued that the $10,300 Check was returned for insufficient funds, he provided no evidence to support that contention.

Mr. Utter's testimony that he never promised Plaintiff a second mortgage and told Plaintiff a second mortgage already encumbered the Mergansar Property is credible and consistent with the official records of Volusia County, Florida, which listed junior mortgages on the Mergansar Property when Plaintiff provided the Additional Loans.[25] The evidence further demonstrated that the senior mortgagee filed the foreclosure action a year after the Mergansar Mortgage was signed, so the Debtors' belief that a foreclosure was not imminent is reasonable and credible.

---

[25] A second mortgage in favor of Summit Mortgage was recorded in the official records of Volusia County, Florida on June 9, 2006. See P. Ex. 5g. Mr. Utter testified that the Summit Mortgage was satisfied and replaced with a second mortgage in favor of JP Morgan Chase Bank. The JP Morgan Chase Bank mortgage was recorded in the official records of Volusia County, Florida on November 13, 2006. P. Ex. 5h. The Volusia County Clerk of Court stamped both mortgages with the date and time they were recorded in the official records. This Court takes judicial notice of the date the mortgages were recorded in the official records, which indicates a second mortgage encumbered the Property prior to and during the time Plaintiff made the Additional Loans. A court may take judicial notice on its own at any stage of a proceeding of a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See Fed. R. Evid. 201*.

The Plaintiff failed to prove that the Debtors intended to deceive Plaintiff. The totality of the circumstances do not support Plaintiff's allegations. Plaintiff knew in the 1990s that loaning the Debtors funds was risky, but continued to do so. The Debtors made payments to Plaintiff intermittently throughout their business association. Given the Plaintiff's business experience (including his knowledge of real estate), long-term business dealings with the Debtors, and knowledge of the Debtors' financial history, the Plaintiff's assertions of fraud to obtain the loans are not plausible. The timeline of events and official records do not support Plaintiff's assertions. The Debtors' testimony was credible and supported by other evidence presented at trial. The Plaintiff failed to meet his burden to determine the debt nondischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code.[26]

The Court now turns to Plaintiff's 727(a)(4)(A) claim. Section 727(a)(4)(A) provides that the court shall grant the debtor a discharge unless the debtor knowingly and fraudulently made a false oath or account.[27] A false oath must be fraudulent and material.[28] To prevail, Plaintiff must prove (i) Debtors made a statement under oath, (ii) such statement was false, (iii) Debtors knew the statement was false, (iv) Debtors made the statement with fraudulent intent, and (v) the statement related materially to the bankruptcy case.[29] A false oath made by mistake or inadvertence will not suffice.[30] Based upon the evidence presented at the trial of this proceeding, the Court finds that the Plaintiff failed to prove that the Debtors made a false oath with fraudulent intent.

---

[26] Having found the Plaintiff's debt to be dischargeable, and considering that this is a no-asset case and no distribution will be made to creditors, the Court declines to address the allowed amount of Plaintiff's claim.

[27] *See* 11 U.S.C. §727(a)(4)(a).

[28] *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991).

[29] *Shappell's Inc., v. Perry (In re Perry)*, 252 B.R. 541, 549 (Bankr. M.D. Fla. 2000).

[30] *See Keef v. Rudolph (In re Rudolph)*, 233 Fed. Appx. 885, 889 (11th Cir. 2007) (a discharge will not be denied when the false oath was the result of mistake or inadvertence) *citing In re Cutignola*, 87 B.R. 702, 706 (Bankr.M.D.Fla.1988).

At trial, Plaintiff asserted that the Debtors failed to list a savings account, three bank accounts, a stock account, and underreported the balance of the checking account listed.  Mrs. Utter testified that she provided all account statements to her attorney and used her best estimate of pending expenses to determine the account balances on the Petition Date.  Neither party offered evidence of the account balances on the Petition Date.  But, the evidence did indicate that the account balances together totaled less than $4,500 weeks prior to the Petition Date.  In any event, the Debtors had over $6,000 of exemptions under Florida law that could have been used to exempt the account balances, if any, on the Petition Date.[31]    Mrs. Utter's testimony and the Debtors' ability to exempt the accounts balances (which were likely less than $6,000), demonstrate that the Debtors omitted the accounts inadvertently, without fraudulent intent.  Plaintiff failed to prove that the Debtors' omitted the accounts with fraudulent intent or that the Debtors underreported the checking account balance on the Petition Date.

Likewise, the Court finds that the Debtors' omissions or underreporting of income and expenses was unintentional.  Mrs. Utter failed to disclose $75.00 she earned from Mary Kay in 2013 and Mr. Utter reported his *net* income from auto sales on the Statement of Financial Affairs and Bankruptcy Schedule I, instead of *gross* income. The Plaintiff failed to provide evidence on any expenses the Debtors failed to disclose or underreported.  Based on the Debtors' demeanor and forthright admission of the errors, the Debtors' unintentionally omitted this income, without fraudulent intent.  The Plaintiff has failed to meet his burden to deny the Debtors a discharge pursuant to Section 727(a)(4)(A) of the Bankruptcy Code.

---

[31] See Main Case Doc. No. 1CC

## Conclusion

For the reasons set forth above, the Court finds in favor of the Debtors. The debt owed to Plaintiff will be discharged, and a discharge will be entered in the Debtors' Chapter 7 case. A separate Judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Clerk's office is directed to serve a copy of this order on all interested parties.